## Case No. 8,110.

LATHROP et al. v. JUNCTION R. CO. et al.

[9 Wkly. Notes Cas. 277.]

Circuit Court, E. D. Pennsylvania. Oct. 28, 1880.

RAILROAD COMPANIES—CONNECTING LINE—CHARTER REQUIREMENTS AS TO OPERATION—EQUITY—INJUNCTION.

[1. Three railroads, P., R., and W., each having a terminus in Philadelphia, agree to connect the termini of the three by a short connecting road. For this purpose a new company is organized, and a charter secured for a new corporation known as the J. railroad. The stock in the new corporation was, except a few shares, subscribed for and owned by the three railroads, P., R., and W. In constructing the J. railroad one mile of the road was built by P. upon land owned by it, and at its own expense. *Held* that, although the property in the one mile of the road was in P., yet that it could not thereby hamper and prevent J. from operating its whole road in furtherance of the purposes for which it was built, viz. as a continuous connecting line.]

[2. A preliminary injunction will be granted upon a bill against J. and P., brought by an individual stockholder of J., to restrain (1) J. from declining or refusing to furnish motive power and the transportation of goods and passengers over its whole road to cars arriving by R. intended for W., or vice versa, which, by its charter, it was required to do; (2) P. from interfering or hindering J. from performing its corporate duties in the furnishing of motive power and the transportation of goods and passengers over its whole line.]

Motion for a preliminary injunction.

Bill in equity, filed by Francis L. Lathrop and Lewis H. Taylor, citizens of the state of New Jersey, for themselves and other stockholders of the Junction Railroad Company, against the Junction Railroad Company and the Pennsylvania Railroad Company, corporations incorporated and doing business under the laws of Pennsylvania. At the same time that this bill was filed similar bills were filed by the Baltimore and Ohio Railroad Company and the Central Railroad Company of New Jersey against the same defendants. The complainants each owned one share of stock of the Junction Railroad Company.

The bill and affidavits set forth the following facts: On May 3, 1860, an act of assembly was passed (Laws Pa. 1860, p. 780) incorporating the Junction Railroad Company, the capital to consist of 5,000 shares of $50 each, subject to the general railroad law of February 19, 1849. The company was authorized to construct a railroad, commencing at a point upon the Philadelphia and Reading Railroad, at or near the bridge of said company, near Peter's Island, in the River Schuylkill, thence by the best route to a point upon the line of the Pennsylvania Railroad, thence by the said railroad by the most direct and practicable route to a point upon the line of the Philadelphia, Wilmington, and Baltimore Railroad. The company was authorized to borrow money to the amount of $300,000, which was subsequently increased to $800,000. By a supplement, passed March 23, 1861 (P. L. p. 177), the company was authorized to use the railroad of the Pennsylvania Railroad and of the West Chester and Philadelphia Railroad, or either of them, with the consent of such companies, respectively, or to construct the whole or such parts of their railroad as may be needful, with or without the use of one or both of the roads of the companies aforesaid. The Junction Railroad Company was

formed by a combination entered into by the Pennsylvania Railroad, the Philadelphia, Wilmington, and Baltimore Railroad, and the Philadelphia and Reading Railroad Companies, and all the stock was subscribed for by them except a few shares subscribed for by individuals. The company was organized, and proceeded to construct a railroad from a point on the Philadelphia and Reading Railroad to Haverford street, and also from the north side of Market street to a point on the Philadelphia, Wilmington, and Baltimore Railroad at or near Gray's Ferry. The ground between the north side of Market street and Haverford street belonged to the Pennsylvania Railroad Company, being part of what is now called the company's yard. The road on this portion of the line was actually made by the Pennsylvania Railroad Company, they paying the cost of materials, labor, and all cost of construction. Bonds were issued by the Junction Railroad Company to the amount of $800,000, secured by a mortgage of the entire road. Proceedings were afterwards instituted by the Junction Railroad Company, in the state courts of Pennsylvania, against the Pennsylvania Railroad Company, to determine the rights of the said companies in the portion of road lying between Market street and Haverford street, and the decree of the supreme court of Pennsylvania declared the ownership of the strip to be in the Pennsylvania Railroad Company, without prejudice, however, to any rights of the Junction Railroad Company relating to the use of said portion. Pennsylvania Railroad Co.'s Appeal, 30 Smith [80 Pa. St.] 265.

By the general railroad law of 1849 [Laws Pa. 1849, p. 79] it is provided that upon the completion of any railroad, the same shall be esteemed a public highway for the conveyance of passengers and the transportation of freight, provided that the said company shall have exclusive control of the motive power, and may estaʊ⸗ish such rates of toll as to the president and directors shall seem reasonable; provided, however, nevertheless, that said rates of toll, when the cars used for such conveyance are owned or furnished by others, shall not exceed two and one-half cents per mile for each passenger; three cents for each ton of 2,000 pounds of freight; three cents per mile for each passenger or baggage car; and two cents per mile for each produce or freight car. The Baltimore and Ohio Railroad Company proposed to send its cars over the Junction Railroad in course of transmission to New York City, and to bring them back again for trausmission to the West. The Philadelphia and Reading Company, and the Philadelphia, Wilmington and Baltimore Railroad Company were ready and willing to receive and haul these cars, respectively, over their roads to and from the Junction Railroad, but the Junction Railroad Company refused to furnish the motive power to haul the said

cars over the portion of their road belonging to the Pennsylvania Railroad Company; permitting the Pennsylvania Railroad Company to furnish exclusively the motive power. The Pennsylvania Railroad Company were requested to furnish the motive power, but returned no answer.

The prayer of the bill was, inter alia: (1) That the Junction Railroad Company be enjoined from refusing to furnish motive power to transport over their road freight or passengers shipped by the Philadelphia, Wilmington and Baltimore Railroad Company, or the Reading Railroad Company. (2) That the Pennsylvania Railroad Company be enjoined from interfering with the Junction Railroad Company in the performance of their corporate duties, and in the transporting of freight and passengers. The Pennsylvania Railroad Company, in their answer, denied that they had ever surrendered any of their rights to the Junction Railroad Company over that portion of the Junction Railroad which belonged to them, and ran through their yard; and denied that the Junction Railroad Company had violated its duty by refusal to transport passengers or merchandise over said strip of land, and that they were themselves required so to transport said cars.

Samuel Dickson and John C. Bullitt, for the motion.

If the owner of an estate stand by and see another expend money upon an adjoining estate, the latter relying upon an existing right of easement in the other estate, without which such expenditure would be useless, and do not interpose to prevent the work, he will not be permitted to interrupt the enjoyment of such easement. Brooks v. Curtis, 4 Lans. 283. This is a right in the nature of a right of way of necessity. Washb. Easem. 31; Cro. Jac. 170–189; 4 Bac. Abr. 688, 689; Morris v. Edgington, 3 Taunt. 31. When two or more persons have a common interest in property, equity will not allow one to appropriate it exclusively, or impair its worth to the others. Jackson v. Ludeling, 21 Wall. [88 U. S.] 616; Green's Brice, Ultra Vires, 565, etc.; Delaware L. & W. R. Co. v. Erie R. Co., 6 C. E. Green [21 N. J. Eq.] 307; Jersey City & H. H. R. Co. v. Jersey City & B. R. Co.. Id. 550. Adequate relief can be given on an interlocutory application. Oxlade v. Northeastern R. Co., 1 C. B. (N. S.) 454; Garton v. Bristol & E. R. Co., 6 C. B. (N. S.) 639; Baxendale v. West Midland R. Co., 3 Giff. 650, 7 L. T. (N. S.) 297; Attorney General v. Great Northern R. Co., 1 Drew & S. 154; Lane v. Newdigate, 10 Ves. 192; Robinson v. Lord Byron, 1 Brown, Ch. 588; Rankin v. Huskisson, 4 Sim. 13; Hervey v. Smith. 1 Kay & J. 392; Attorney General v. Metropolitan Board of Works, 1 Hem. & M. 312; Hepburn v. Lordan, 2 Hem. & M. 345; Beadel v. Perry, L. R. 3 Eq. 465; Cooke v. Chilcott, 3 Ch. Div. 694; Audenried

v. Philadelphia & R. R. Co., 68 Pa. St. 375; Cole Silver Min. Co. v. Virginia [Case No. 2,990]; Baptist Congregation v. Scannel, 3 Grant Cas. 49; Manhattan M. & F. Co. v. New Jersey S. Y. & M. Co., 8 C. E. Green [23 N. J. Eq.] 161.

Wayne McVeagh, Chapman Biddle, and John Scott, for respondents the Pennsylvania Railroad Co.

This is not a case for the issue of a preliminary injunction. There is no precedent for using a preliminary writ to take the subject of the litigation from a party who has always heretofore enjoyed it, and give it pendente lite, to a party who has never heretofore enjoyed it—that being the function of a final decree only. There is "not only a current but a torrent of authorities" to the contrary. Child v. Douglas, Kay, 578; Turner v. Spooner, 1 Drew. & S. 467; Durell v. Pritchard, 1 Ch. App. 244; Gale v. Abbot, 8 Jur. (N. S.) 988; Camblos v. Philadelphia & R. R. Co. [Case No. 2,331]; Farmers' R. Co. v. Reno O. C. & P. R. Co., 53 Pa. St. 224; Mammoth Vein Consol. Coal Co.'s Appeal, 54 Pa. St. 183; Murdock's Case, 2 Bland, 469; Washington University v. Green, 1 Md. Ch. 97; New York Printing & Dyeing Establishment v. Fitch, 1 Paige, 97; Bosley v. Susquehanna Canal, 3 Bland, 65; Attorney General v. New Jersey R. & T. Co., 2 Green Ch. [3 N. J. Eq.] 136; Attorney General v. City of Paterson, 1 Stock, Ch. [9 N. J. Eq.] 624. But even if a preliminary injunction were a proper remedy the complainants in this case are not entitled to the relief sought. Although they sue as nominal stockholders (having purchased one share each), the bill is not filed in good faith for the protection of the stockholders' interests, but is in aid of the other bills filed by the Baltimore and Ohio and the N. J. Central Railroad Companies, two foreign corporations of which the complainants are officers. Even in the case of bona fide stockholders' bills, the complainants must aver that they had appealed to the company to protect itself, and that it had refused. This bill contains no such allegation. Dodge v. Woolsey, 18 How. [59 U. S.] 331; Sparhawk v. Union P. R. Co., 4 Smith [54 Pa. St.] 401; Forrest v. Manchester S. & L. R. Co., 7 Jur. (N. S.) 887. The stockholders cannot have this relief upon any other grounds than that the directors of the Junction Company are guilty of a breach of trust. They are not guilty of that breach of trust because the relation in which they stand to the Pennsylvania Railroad Company for the use of this mile of track is in effect and in law a contract made in pursuance of the terms of their charter and exercise of their discretion; and unless this court will undertake to put itself in the place of the directors, reversing their discretion, and say that the mile must be run in some other mode than under this contract, there can be no injunction. 1 Potter, Corp. § 84; Green's Brice, Ultra Vires, 183.

James E. Gowen, for the Junction Railroad Co.

McKENNAN, Circuit Judge. It is no part of my present purpose to notice any other than the main question in this case. It is sufficient for me to say, as to several other questions discussed by counsel at the argument, that, in my opinion, the court has power to grant the preliminary relief prayed for, and that the alleged impending injury to the interests of the complainants is of such a character as to entitle them to invoke the intervention of the court. The Junction Railroad Company is a corporation created by a special act of the Pennsylvania legislature, dated May 30, 1860, whereby it was authorized to "construct a railroad commencing at a point upon the Philadelphia and Reading Railroad, at or near the bridge of said company, near Peter's Island in the river Schuylkill; thence by the best route to a point upon the line of the Pennsylvania Railroad, within one mile east of George's Run, at the village of Hestonville; thence by the line of the Pennsylvania Railroad, by the most direct and practicable route, to a point upon the line of the Philadelphia, Wilmington and Baltimore Railroad." By a supplement to this charter, passed in 1861, the Junction Railroad Company was authorized to "make a complete line of railway from a point on the Philadelphia and Reading Railroad, at or near the bridge at Peter's Island, to a point on the Philadelphia, Wilmington and Baltimore Railroad, at or near Gray's Ferry bridge, by the most convenient and practicable route." By further legislation the company was authorized to borrow $500,000 upon mortgage of its property and franchises, and upon this security a loan of that amount was negotiated upon the authorized guaranty of it by the three companies named. The stock of the company was taken and is now held by the Pennsylvania Railroad Company, the Philadelphia and Reading Railroad Company, and the Philadelphia, Wilmington and Baltimore Railroad Company, except a few shares which were held by individuals. At the organization of the company in 1861, the president of the Pennsylvania Railroad Company was elected its president, and occupied that position until 1867, during which time the whole line of its road was located definitely between its prescribed termini; under his direction a large sum, to wit, about $870,000, was expended in its construction, and the whole of the road, except that part between Market and Thirty-Fifth streets, was completed by it. This intervening part was constructed by the Pennsylvania Railroad Company, and was held by the supreme court of Pennsylvania to be the property of that company, and this decision must be regarded as conclusive, so far as the legal ownership of that link is concerned. But in view of the admission that the Junction

Railroad may have rights touching the use of the section of road referred to, the decree was entered without prejudice to such rights, or to the assertion of them in an appropriate proceeding.

Various other facts are alleged in the bills of complaint, and are verified by the accompanying affidavits, which, all together, constitute a "strange, eventful" history of the construction of the road. Enough of them have been here stated to indicate the vital object, and the essential importance to the public, of the construction of the road. The Pennsylvania, the Philadelphia and Reading, and the Philadelphia, Wilmington and Baltimore Railroads terminate at Philadelphia. They were unconnected with each other, and so the immense traffic requiring transfer from the one to the other, was necessarily conducted with great expense, inconvenience, and embarrassment. These difficulties could be almost entirely avoided by the construction of a continuous line only about four miles long, from Gray's Ferry to Peter's Island, and accordingly the Junction road was projected and made. A broken line with a gap in the middle of it would not answer the purpose; its continuity was absolutely essential to effectuate the object of its creation, as well as to meet the just expectation of its stockholders and the public. So, in the annual report of the Pennsylvania Railroad Company, Feb. 3, 1862, it is said: The Philadelphia, Wilmington and Baltimore Railroad Company, the Philadelphia and Reading Railroad Company, and the Pennsylvania Railroad Company have organized the Junction Railroad Company, under a charter procured from the legislature of 1860, and amended at the last session. The object of this line is to connect these three railroads by a continuous line along the west bank of the Schuylkill river, from the Reading Railroad, near Peter's Island bridge, to the Philadelphia, Wilmington and Baltimore Railroad, at Gray's Ferry, intersecting the Pennsylvania Railroad, near the wire bridge, at Fairmount, so that an interchange of freight between these lines may be effected without passing through the populous portions of the city. In apparent accordance with this declaration were all the acts and declarations of the Pennsylvania Railroad Company during the progress of construction until the controversy arose as to the ownership of the middle section, and they may, therefore, be fairly regarded as, in a great measure, inducing the expenditure of the large sum laid out by the Junction Railroad on its line. Any other hypothesis must assume that the Junction Railroad Company was willing to imperil the chief object of the enterprise and the value of its investment, by making itself entirely dependent upon the arbitrary will of the owner of the middle section for the profitable use and enjoyment of the two other sections of the line.

Ought the Pennsylvania Railroad Company then to be permitted so to control the section of the road of which it is the proprietor, as to exclude the Junction Railroad Company from participation in its use as part of a continuous line? I think not. It must be treated, in equity, as having agreed to such reasonable use of the section owned by it, as is necessary to effectuate the common object of those who furnished the means of constructing the Junction Railroad as a continuous line; and, to that extent, to a modification of its proprietary rights. It would certainly be unwarrantable in the Junction Company to exclude the Pennsylvania Railroad Company from the beneficial use of the northern and southern sections of the Junction road, either by denying it altogether or by imposing burdensome restrictions upon it. Why ought not a like measure of justice be meted out to the other interests associated with the Pennsylvania Company in reference to the middle section of the Junction road, when it induced these interests to make large expenditures of money and incur large liabilities upon the faith that this middle section should constitute an indispensable constituent of a joint enterprise? There is no just ground for any discrimination. While I am of opinion that the Junction Railroad Company may have the right to employ its own motive power over the whole line between its termini, yet, I think, the operations of the road should be conducted with as little friction as possible, and without any avoidable abridgment of the proprietary rights of the Pennsylvania Railroad Company. The injunction granted, therefore, will not restrain that company from operating its own portion of the line with its own motive power.

The following decree was entered:

(1) And now it is ordered and decreed that an injunction be granted until further order of this court, enjoining and restraining the said Junction Railroad Company, its officers, servants and agents, from declining or refusing or in any manner failing to perform the duties required of them by the charter of said company, and especially from declining or refusing to furnish motive power, haul, receive, ship or transport over its road freights or passengers arriving in cars by the Philadelphia, Wilmington and Baltimore Railroad destined for the Philadelphia and Reading Railroad or its connections, or from declining or refusing to furnish motive power, haul, receive, ship or transport freight or passengers arriving in cars by the Philadelphia and Reading Railroad, destined for the Philadelphia, Wilmington and Baltimore Railroad or its connections.

(2) That the said Pennsylvania Railroad Company, its officers, agents, and servants, be enjoined and restrained from interfering with or in any manner hindering the said

Junction Railroad Company from performing its said corporate duties and transporting freight and passengers as aforesaid.

(3) This injunction shall not be taken to restrain the Pennsylvania Railroad Company from furnishing exclusively the motive power to transport the cars aforesaid over and upon that portion of the Junction line which is situated between the north side of Market and Thirty-Fifth streets in the city of Philadelphia.